UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LARENDA MARIE MINEAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:16 CV 88 ACL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff Larenda Marie Minear brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Minear's severe physical impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

Minear filed applications for DIB and SSI on February 12, 2013, claiming that she became unable to work on January 9, 2013, because of lower back and hip pain. (Tr. 113-16, 393-03.)

Minear was 40 years of age at the time of her alleged onset of disability. *Id.* Her claims were denied initially. (Tr. 29-41.) An initial administrative hearing was held on January 26, 2015. (Tr. 424.) The ALJ determined that a consultative orthopedic examination was necessary before he could render a decision. (Tr. 437-38.) Following a supplemental administrative hearing, Minear's claims were denied in a written opinion by an ALJ, dated September 25, 2015. (Tr. 16-28.) Minear then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on October 12, 2016. (Tr. 9-12.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Minear first argues that the "RFC determination is unsupported by substantial evidence because the ALJ accorded inadequate weight to the supported opinions of treating physician Dr. Dymek." (Doc. 19 at 1.) She next claims that the "ALJ's Step 5 finding is not supported by substantial evidence." *Id.*

## II. The ALJ's Determination

The ALJ first found that Minear met the insured status requirements of the Social Security Act through December 31, 2017, and did not engage in substantial gainful activity since January 9, 2013, her alleged onset date. (Tr. 18.)

In addition, the ALJ concluded that Minear had the following severe impairments: asthma, osteoarthritis of the lumbar spine, and obesity. *Id.* The ALJ found that Minear did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20.)

As to Minear's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift or carry 10 pounds occasionally. The claimant can stand for 15 minutes at a time, for up to 2 hours in an 8-hour workday. The claimant can walk for 1 hour a day for 20 minutes at a time. The claimant can sit for 1 hour at a time, for up to 6 hours in an 8-hour workday. The claimant can push or pull in the limits for lifting and carrying. The claimant can occasionally climb ladders, ropes, scaffolds, ramps and stairs. The claimant should not stoop, kneel, crouch, or crawl. The claimant can continually balance. The claimant should not work at unprotected heights. In addition, the claimant would need to change positions occasionally within the limits already given.

(Tr. 20.)

The ALJ found that Minear's allegations regarding the extent of her limitations were not entirely credible. (Tr. 24.) In determining Minear's RFC, the ALJ indicated that he was assigning "partial weight" to the opinions of treating physician Waclaw Dymek, M.D.; and "significant weight" to the opinions of consultative physician Kathrina Alexander, M.D. (Tr. 26.)

The ALJ further found that Minear was unable to perform past relevant work, but was capable of performing other jobs existing in the national economy, such as document preparer, eyeglass polisher, and patcher. (Tr. 27-28.) The ALJ therefore concluded that Minear was not under a disability, as defined in the Social Security Act, from January 9, 2013 through the date of the decision. (Tr. 28.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on February 12, 2013, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on February 12, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is

> based upon a proper hypothetical question which sets forth the
> claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security

Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

Minear challenges the ALJ's physical RFC determination,[1] the ALJ's evaluation of the medical opinion evidence, and the ALJ's resulting step five finding.

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations. *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer,* 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue,* 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart,*

---

[1] The ALJ found that Minear's medically determinable mental impairment of anxiety was not severe and did not include any resulting limitations in her RFC. (Tr. 19.) Minear does not challenge these findings. Consequently, the undersigned will not discuss the evidence regarding Minear's mental impairments.

471 F.3d 902, 907 (8th Cir. 2006).

Minear first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ assigned inadequate weight to the opinions of treating physician Dr. Dymek.

Dr. Dymek completed a Residual Functional Capacity Questionnaire on October 7, 2013,[2] in which he expressed the opinion that Minear could sit for sixty minutes at a time, and sit for a total of five hours in an eight-hour workday; stand or walk for fifteen minutes at a time, and stand or walk a total of three hours in an eight-hour workday; could occasionally lift less than ten pounds; and grasp, reach, and use her fingers for fine manipulation 50% of an eight-hour workday. (Tr. 276-77.) He found that Minear would need to recline or lie down during an eight-hour workday, would need to take an unscheduled fifteen-minute break at least every hour; requires a job that permits shifting positions at will from sitting, standing, or walking; and was likely to be absent from work more than four times a month due to her impairments. *Id.*

The ALJ discussed Dr. Dymek's opinion. (Tr. 26.) The ALJ found that Minear would be restricted in "sitting, standing and walking based on objective findings including positive straight leg raise and lesion of the hip." *Id.* The ALJ, however, stated that he found "no basis for lifting limitations of less than 10 pounds (specifically physical examinations reveal normal bulk, muscle tone and strength) or that the claimant would miss over 4 days a month of work secondary to her alleged complaints." *Id.* He indicated that he therefore afforded Dr. Dymek's opinion "only partial weight." *Id.*

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v.*

---

[2] Dr. Dymek completed two subsequent questionnaires—on June 18, 2014, and November 17, 2014—in which he set out the same limitations. (Tr. 316, 356.)

*Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011).

The ALJ properly weighed Dr. Dymek's opinion. The ALJ provided a detailed summary of Dr. Dymek's treatment records. Dr. Dymek noted that Minear saw him for routine care from August 2011 to August 2015. (Tr. 22.) On June 29, 2012, Minear complained of weight gain and back pain, but was otherwise "doing ok." (Tr. 22, 264.) Minear's musculoskeletal examination revealed normal symmetry, tone, strength, and range of motion; there was no effusion, instability or tenderness to palpation; and her gait was within normal limits. (Tr. 22, 265-66.) Dr. Dymek counseled Minear on weight management and regular exercise; encouraged her to stop smoking; and renewed her prescriptions for Soma[3] and ibuprofen. (Tr. 22, 266.) On January 7, 2013, Minear presented with complaints of back pain. (Tr. 22, 261.) Upon examination, Minear's back was tender and her range of motion was restricted by pain, but her musculoskeletal examination revealed normal tone, strength, and range of motion, with no instability or tenderness to palpation. *Id.* Her gait was within normal limits. *Id.* Dr. Dymek diagnosed Minear with low back pain, and prescribed Lortab.[4] *Id.* Minear returned two days

---

[3]Soma is indicated for the treatment of muscle pain. *See* WebMD, http://www.webmd.com/drugs (last visited March 23, 2018).

[4]Lortab is a combination of opioid and non-opioid pain reliever indicated for the treatment of moderate to severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited March 23, 2018).

later with complaints of low back pain that "felt like someone was sticking a knife in her." (Tr. 22, 257.) Upon examination, Minear ambulated without difficulty; no tenderness was noted on palpation; she had normal range of motion; and her strength and sensation were intact. *Id.* Dr. Dymek ordered imaging of the lower spine, and advised Minear to continue taking her medications. *Id.* The ALJ noted that Minear presented to Dr. Dymek from June 2013 to June 2014 for a variety of routine healthcare issues including upper respiratory infection, cough, congestion, right shoulder pain, and hypertension. (Tr. 22, 280-313.) Minear also continued to complain of back and hip pain. *Id.* Examinations revealed occasional back tenderness on palpation and range of motion restricted by pain. *Id.* The ALJ pointed out that, on January 31, 2014, Dr. Dymek advised Minear that he would "no longer be prescribing chronic narcotic pain medication." (Tr. 23, 286.) Dr. Dymek offered Minear a referral to a pain specialist. *Id.* On August 29, 2014, Dr. Dymek referred Minear to physical therapy for her low back pain. (Tr. 23, 338.) On October 23, 2014, Minear presented requesting refills of Norco[5] for pain and Xanax[6] for anxiety. (Tr. 23, 330.) Upon examination, Dr. Dymek noted lumbar tenderness, mildly decreased range of motion, and a mildly antalgic gait. *Id.* Dr. Dymek stated that he advised Minear that there was "no hint of a dangerous problem and that rapid recovery was expected." *Id.* He further advised Minear that bedrest was only recommended for severe leg pain, and was otherwise not needed and could inhibit her recovery. *Id.* Dr. Dymek recommended aerobic activity such as walking, swimming, stationary bicycle, or light jogging. *Id.* On November 14, 2014, Minear returned, requesting that Dr. Dymek complete disability paperwork. (Tr. 23, 328.)

---

[5]Norco is a combination of opioid and non-opioid pain reliever indicated for the treatment of moderate to severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited March 23, 2018).
[6]Xanax is a benzodiazepine drug indicated for the treatment of anxiety and panic disorders. *See* WebMD, http://www.webmd.com/drugs (last visited March 23, 2018).

Recent treatment notes from August 2015 reveal a continued diagnosis of low back pain, with some decreased range of motion but normal strength and sensation, and a mildly antalgic gait. (Tr. 24, 388.)

The ALJ's finding that Dr. Dymek's limitations were not entirely supported is consistent with Dr. Dymek's treatment notes. Although Dr. Dymek occasionally noted some limitation of motion of the spine and tenderness, he consistently found normal muscle tone and strength, normal sensation, and a normal or mildly antalgic gait. The extreme limitations that the ALJ rejected—Minear's inability to lift even ten pounds, need for frequent breaks, and need to miss four days of work a month due to her impairments—were unsupported by Dr. Dymek's treatment notes and he offered no elaboration for the findings in his checklist-style opinion. A checklist format and conclusory opinions, even of a treating physician, are of limited evidentiary value. *See Thomas v. Berryhill*, 2018 WL 704215 (E.D. Mo. Feb. 5, 2018) (The ALJ properly accorded treating physician's assessments little weight because "[t]hose assessments … consist of nothing more than vague conclusory statements – checked boxes, circled answers, and brief fill-in-the-blank responses…. and provide little to no elaboration, and so they possess 'little evidentiary value.'"); *Wildman*, 596 F.3d at 964; *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("The checklist format, generally, and incompleteness of the [RFC] assessments limit their evidentiary value.").

The ALJ next discussed the opinion of consultative physician Dr. Kathrina Alexander. (Tr. 26-27, 370-383.) The ALJ noted at Minear's initial administrative hearing that Dr. Dymek's opinions were "kind of check the blank," and that a consultative orthopedic examination would therefore assist him in making a determination. (Tr. 438.) Minear saw Dr. Alexander on March 21, 2015, between his two administrative hearings. Minear reported a history of lower back and

left hip problems since 2010, secondary to a c-section. (Tr. 370.) She complained of pain, occasional numbness in her toes, dizziness with standing too quickly, fatigue, weakness, and shortness of breath. *Id.* She described constant, achy, sharp, shooting pain in her back, buttocks, and hips, which she rated as a six out of ten at that time and a maximum of eight. *Id.* Upon examination, Minear's gait and station were normal, no assistive device was present or necessary, muscle bulk and tone were normal, sensory examination was intact throughout, straight leg raise test was positive for radicular signs (namely lower back pain) on the right at 70 degrees, and no swelling or tenderness of the joints was noted. (Tr. 372-73.) Minear was able to lift, handle, and carry light objects; touch her toes; squat and rise from a chair; mount and dismount the examination table without assistance; lie and rise from the supine position without assistance; stand on her heels and toes; stand on one foot; and perform the tandem gait. (Tr. 373.) She was not able to hop on one foot, and was only able to crouch halfway. *Id.* Minear had full range of motion of her back and extremities, except that her straight leg raise was positive on the right. (Tr. 376-77.) Dr. Alexander diagnosed Minear with lower back pain and left hip pain. (Tr. 373.) She stated that Minear is able to sit, stand, and walk on exam; lift and carry light burdens, although her lumbar spine issues as noted by her positive straight leg raise test may require her to change positions frequently and may reasonably limit the weights she can lift and carry; reach, handle, and finger without significant impediment; is unable to kneel, crouch, or crawl; and has no significant deficits with regard to heat, cold, or vibration. (Tr. 373-74.) Dr. Alexander also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical), in which she expressed the opinion that Minear could: occasionally lift and carry eleven to twenty pounds, and continuously lift or carry up to ten pounds; sit for one hour at a time and sit a total of six hours in an eight-hour workday; stand for fifteen minutes at a time and stand a total of two hours in an

eight-hour workday; walk for twenty minutes at a time and walk a total of one hour in an eight-hour workday; occasionally climb stairs, ramps, ladders, or scaffolds; and never stoop, kneel, crouch, and crawl. (Tr. 378-81.) As support for these findings, Dr. Alexander noted the presence of an osteoblastic lesion on Minear's left hip on imaging and the positive straight leg raise testing on the left. *Id.*

The ALJ stated that Dr. Alexander's findings are "consistent with information in physical examinations, objective x-rays and MRI's, the claimant's daily activities and physician's recommendations encouraging exercise." (Tr. 27.) He stated that he was therefore affording the opinion "significant weight," and had accounted for the limitations in his RFC determination. *Id.*

Minear contends that the ALJ erred in rejecting without explanation Dr. Dymek's finding that Minear was limited to sitting only five hours a day, and in relying upon the opinion of the consultative examiner instead. She also argues he erred in failing to include the limitations in reaching, handling, or fingering.

The Court finds that that the ALJ properly weighed the medical opinion evidence. An ALJ may give more weight to a consultative physician's opinion where, as here, her opinion is supported by better or more thorough medical evidence. *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir. 2000). The ALJ is not required to adopt in its entirety any particular doctor's opinion or to choose between the opinions of any of the claimant's physicians. *Martise,* 641 F.3d at 927.

In this case, the ALJ properly ordered a consultative examination after finding Dr. Dymek's opinions lacked support. Dr. Alexander performed a comprehensive examination, which revealed mostly normal findings, including the ability to lift, touch her toes, squat, lie and rise from the supine position without assistance. Dr. Alexander provided a detailed explanation of Minear's work capacities. She specifically found that Minear was able to reach, handle, and

finger without significant impediment, contrary to Dr. Dymek's finding. (Tr. 373-74.) Because Dr. Alexander provided an explanation for her findings and supported them with her clinical findings on examination, the ALJ did not err in according her opinion significant weight.

The ALJ concluded that Minear has functional limitations resulting from her impairments, but her allegation of disability was not credible. (Tr. 26.) He found that Minear is limited to a restricted range of sedentary work. *Id.*

The ALJ's RFC determination is supported by the medical evidence including, the opinion of consultative physician Dr. Alexander. In fact, the ALJ's assessment was slightly more restrictive, in that Dr. Alexander found that Minear could lift up to twenty pounds, whereas the ALJ found she was limited to lifting no more than ten pounds. The ALJ properly considered the opinion of treating physician Dr. Dymek, and incorporated many of Dr. Dymek's findings. The ALJ did not err in declining to include Dr. Dymek's limitations regarding sitting, reaching, handling, or fingering, as he set forth sufficient reasons for relying on Dr. Alexander's opinions instead.

The ALJ also discussed other evidence of record, including imaging revealing spondylosis at L1 to L3 but otherwise a normal lumbar spine with no root compression at any level. (Tr. 24, 389.) He summarized the records of Sisenando Galvez, M.D., another physician Minear saw on occasion for her pain complaints. The ALJ stated that, in March 2014, Dr. Galvez noted that Minear requested opioids when he did not think she needed them. (Tr. 23, 283.) Dr. Galvez indicated that he believed Minear and her husband were sharing medications. *Id.* Upon examination, Dr. Galvez found that Minear's gait was normal, and no significant abnormalities were noted. (Tr. 23, 284.)

In determining Minear's RFC, the ALJ also performed a credibility analysis and found her

allegations were not entirely credible. Before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility. *Wagner v. Astrue,* 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart,* 403 F.3d 953, 957 (8th Cir. 2005). Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). The ALJ discredited the credibility of Minear's subjective complaints of disabling symptoms for the following reasons: (1) she has a history of low earnings; (2) evidence in the medical records indicate Minear is a pain medication seeker; (3) she has not utilized conservative treatment such as physical therapy despite her treating physician's referral to physical therapy; (4) she is able to manage her pain with medication; (5) her treating physician has recommended exercise, indicating that she is capable of light activity; and (6) her daily activities, including the ability to take care of her child, cook, perform routine household duties, care for her garden, shop, and drive are inconsistent with her allegations. (Tr. 24-25.)

In sum, the ALJ's RFC determination is based on substantial evidence on the record as a whole. The ALJ assessed Minear's physical RFC based on the treatment notes of Minear's treating and consulting physicians, the objective imaging, and Minear's testimony. The ALJ performed a proper credibility determination and found Minear's allegations of total disability were not entirely credible. Minear did not meet her burden to establish a more restrictive RFC. The record, when considered as a whole, supports a conclusion that Minear is capable of performing a limited range of sedentary work. The fact that the record might also support a contrary conclusion is not a basis for reversing the ALJ's decision in this case. *See Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016); *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir.

2010).

As to Minear's claim that the ALJ's Step Five finding was not supported by substantial evidence, the hypothetical question the ALJ posed to the vocational expert (VE) was based on the RFC formulated by the ALJ, which accounted for all of Minear's credible limitations. Consequently, the hypothetical question posed to the ALJ was proper. *See Martise,* 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006)).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of March, 2018.